NO. COA13-46

NORTH CAROLINA COURT OF APPEALS

Filed: 21 January 2014

STATE OF NORTH CAROLINA

    v.

JOSHUA ANDREW STEPP

Wake County
No. 09 CRS 209725

Appeal by Defendant from judgment entered 13 September 2011 by Judge W. Osmond Smith III, in Wake County Superior Court. Heard in the Court of Appeals 14 August 2013.

> *Attorney General Roy Cooper, by Assistant Attorney General Anne M. Middleton and Sherri Horner Lawrence, for the State.*
>
> *Appellate Defender Staples Hughes, by Assistant Appellate Defender Barbara S. Blackman, for Defendant.*

DILLON, Judge.

Joshua Andrew Stepp (Defendant) appeals from a judgment sentencing him to lifetime imprisonment, based on a jury verdict finding him guilty of first-degree murder, under the felony murder rule, for the death of his ten-month old stepdaughter Cathy.[1] We conclude Defendant is entitled to a new trial based on the trial court's failure to instruct the jury on an affirmative defense to

---

[1] Cathy is a pseudonym.

the underlying felony, which supported the first-degree murder conviction.

## I: Background

On the night of 8 November 2009 at approximately 8:50 P.M., Defendant placed a 911 call from his Wake County apartment, where he resided with three other people: Brittany Yarley ("Ms. Yarley"), his wife of six months; Cathy, Ms. Yarley's ten-month old daughter; and Defendant's four-year old daughter.

### A: Physical Evidence at the Scene

Police officers and EMS responded to Defendant's 911 call and discovered that Cathy had no pulse and was not breathing. The responders attempted resuscitation and were able to get a pulse in the ambulance before Cathy went into cardiac arrest. When Cathy arrived at Wake Medical Center, she had no vital signs. Cathy's pupils were fixed and dilated, indicating brain death; Cathy was declared dead fifteen minutes after her arrival.

In a trash can at the apartment the officers found a urine-soaked diaper, three diapers containing baby wipes, feces, and blood, and empty rum, whiskey, and beer bottles. Blood and feces were visible in a number of locations throughout the apartment. Blood was also found on Defendant's underwear. Defendant smelled of alcohol.

## B: Cathy's Injuries

During the course of the evening, Cathy sustained injuries to her head and back as well as to her rectal and genital areas. Her head and back injuries included several bruises, a broad abrasion on her forehead, lacerations in her mouth, and hemorrhaging in her brain and retinas. Cathy's rectal injuries included bruising and several deep and superficial tears in and around her anal opening.

The injuries to her genital area, which were less severe than those in her rectal area, included two superficial tears on the forward portion and a single wider tear at the rear portion. However, there was no evidence of injuries indicating deep penetration; and her hymen was intact.

## II: The Trial

On 30 November 2009, Defendant was indicted on charges of first-degree murder and first-degree sexual offense. The matter came on for trial at the 18 July 2011 criminal session of Wake County Superior Court.

## A: State's Evidence

At trial, the State offered the testimonies of a number of medical witnesses, which tended to show as follows: Cathy's head injuries were likely caused by multiple blows which were consistent with non-accidental trauma "caused by an abusive person." Her

rectal injuries were consistent with the introduction of a penis or other object that penetrated the anus but most likely *not* by a single finger wrapped in a wipe. Her genital injuries may have been caused by a finger or an object, and were also consistent with an adult attempting, unsuccessfully, to insert his penis into her vagina.

## B: Defense Evidence

Defendant testified in his own behalf and offered the testimonies of other witnesses, including experts, which tended to show as follows: Defendant was a member of the Army Reserves, having resigned from active duty after completing a tour in Iraq. He suffered from post-traumatic stress disorder and alcohol dependency. Ms. Yarley was also an Army reservist, who worked at Fort Bragg.

During the day of 8 November 2009, Defendant took four Vicodin capsules and drank several shots of liquor and cans of beer. He spent the afternoon at a sports bar where he continued drinking. Because Ms. Yarley was scheduled to work the night shift on that day, Defendant returned to the apartment at 7:25 P.M. to watch the children for the evening. Upon his return, Cathy was crying and screaming; and Ms. Yarley noticed that Defendant was lethargic and stumbling.

After Ms. Yarley's departure, Defendant ate dinner and then attempted to calm Cathy down by holding her and giving her a bottle. He then placed Cathy on the floor of his bedroom closet and walked away to escape the sound of her crying. Defendant returned to her, grabbed her by the back of the head, and rubbed her face into the carpet. Cathy's face became raw and began to bleed, and she cried even harder. Defendant used a damp washcloth to dab the blood and then carried Cathy into the living room, put Vaseline on her face, and laid her down on the living room floor. This episode occurred at approximately 8:00 P.M., which was the time that, according to a defense witness, Defendant's blood alcohol level likely peaked at 0.141%.

Moments later, Defendant opened Cathy's diaper and discovered that it was full of feces. Cathy flailed and screamed as Defendant tried to clean her with a baby wipe. Defendant wiped aggressively to get the feces and urine off of Cathy's body. Cathy began bleeding from her anus, and Defendant tried to stop the bleeding with a baby wipe. A few minutes later, Cathy was still bleeding and had defecated again. Defendant cleaned Cathy again with a baby wipe and put on a second fresh diaper. However, the second diaper became soiled, and Defendant cleaned and changed Cathy a third time.

Cathy continued to scream and cry. Defendant then grabbed some toilet paper, wet it, and put it in Cathy's mouth in an attempt to stop the screaming. However, Cathy started gagging. Defendant was unable to retrieve the toilet paper from Cathy's mouth with his fingers; so he picked Cathy up, shook her, and hit her on her back to try to dislodge the toilet paper. He was then able to pull the toilet paper out of Cathy's mouth with his fingers; however, by this time, Cathy was barely breathing. Moments later, Cathy stopped breathing, whereupon Defendant made the 911 call.

The testimonies of Defendant's witnesses tended to show that Defendant suffered from substance abuse issues and post-traumatic stress disorder caused by his military service, conditions which affected his impulse control and decision making; that on the evening in question, he had trouble coping with Cathy's crying; and that his intentions all along were to stop Cathy from crying. Regarding Cathy's injuries, one defense medical witness testified that he had frequently seen vaginal and rectal tears caused by parents using force to clean feces, and that Cathy's injuries to her rectal and genital areas were consistent with harsh cleaning with a finger and baby wipes and were *not* consistent with a sexual assault.

## C: Closing Arguments

During closing arguments, the State asserted that the jury should find Defendant guilty of first-degree murder. The State contended that Defendant's acts involved premeditation and deliberation. Alternatively, the State contended that Defendant was guilty of first-degree murder based on the felony murder rule, as the evidence showed that Defendant had either raped or attempted to rape Cathy, or otherwise committed a sexual offense upon Cathy.

Defendant admitted that he was responsible for Cathy's death, but contended that he had not acted with premeditation and deliberation due to his condition, nor had he sexually assaulted Cathy in any way; and, therefore, Defendant asserted the jury should consider returning a guilty verdict for second degree murder.

## D: The Verdict and Judgment

The jury found Defendant guilty of first-degree murder. Specifically, the verdict sheet submitted to and answered by the jury stated as follows:

> We, the jury, return as our unanimous verdict that the defendant is:
>
>  X   Guilty of first degree murder
>
> If you find the defendant guilty of first degree murder, is it:

A.     On    the    basis    of    malice,    premeditation,    and
deliberation?
     ANSWER:     <u>NO</u>

B.     Under the first degree felony murder rule in the
perpetration of rape of a child by an adult?
     ANSWER:     <u>NO</u>

C.     Under the first degree felony murder rule in the
attempted perpetration of rape of a child by an adult?
     ANSWER:     <u>NO</u>

D.     Under the first degree felony murder rule in the
perpetration of sexual offense with a child by an adult?
     ANSWER:     <u>YES</u>

If you find the defendant guilty of first degree murder
under  the  first  degree  felony  murder  rule  in  the
perpetration  of  a  sexual  offense  with  a  child  by  an
adult, is it:

1. Based upon a sexual act of anal intercourse?
     ANSWER:     <u>NO</u>

2. Based upon a sexual act of penetrating by an object
   into the genital opening of the alleged victim?
     ANSWER:     <u>YES</u>

3. Based upon a sexual act of penetration by an object
   into the anal opening of the alleged victim?
     ANSWER:     <u>NO</u>

__     Guilty of second degree murder[2]

__     Not guilty

---

[2] Having convicted Defendant of first-degree murder, the jury did
not  reach  the  question  of  Defendant's  guilt  of  second  degree
murder.

Based on the jury's verdict, the trial court imposed a sentence of life imprisonment without parole.  From this judgment, Defendant appeals.

### III: Analysis

In Defendant's sole argument on appeal, he contends the trial court committed reversible error by failing to instruct the jury on an affirmative defense to the predicate felony on which the jury based its first-degree murder conviction.  We agree.

As reflected by its responses to the issues presented on the verdict sheet, the jury convicted Defendant of first-degree murder based *solely* on its determination that Defendant was also guilty of committing a "sexual offense with a child" in violation of N.C. Gen. Stat. § 14-27.4 (2011), a Class B1 felony which proscribes, *inter alia*, the engagement of a "sexual act" with a child by an adult.  Further, the jury concluded that Defendant was guilty of committing this offense based *solely* on its determination that Defendant had committed a "sexual act," as defined in N.C. Gen. Stat. § 14-27.1(4) (2011), upon Cathy by penetrating her *genital* opening with an object.[3]

---

[3] Though the jury could have found Defendant guilty of first-degree murder based on *either* premeditation and deliberation *or* based on a finding that Defendant either had vaginal intercourse or attempted to have vaginal intercourse with Cathy, the jury found Defendant *not guilty* based on these theories. Further, the jury

N.C. Gen. Stat. § 14-27.1(4) (2011), defines "sexual act,"
in relevant part, as:

> . . . the penetration, however slight, by any
> object into the genital . . . opening of
> another person's body:  provided, that *it
> shall be an affirmative defense that the
> penetration was for accepted medical purposes.*

*Id.* (emphasis added).  The "penetration" of the female "genital
opening" is accomplished when the defendant has caused an object
to enter the labia without entering the vagina, *see State v.
Bellamy*, 172 N.C. App. 649, 658, 617 S.E.2d 81, 88 (2005), *disc.
review denied*, 360 N.C. 290, 628 S.E.2d 384 (2006); and an "object"
can be, not only an inanimate object, but also a human body part,
such as a finger, *see State v. Lucas*, 302 N.C. 342, 345, 275 S.E.2d
433, 436 (1981).

At trial, Defendant admitted that he penetrated Cathy's
genital opening with his finger; however, he requested an
instruction on the affirmative defense provided by N.C. Gen. Stat.
§ 14-27.1(4), that he penetrated her genital opening for "accepted

---

could have found that Defendant committed a "sexual act" by
penetrating Cathy's *anal* opening with either his penis or another
object; however, the jury found Defendant *not guilty* of felony
sexual offense based on these theories as well.  Accordingly, our
review *must* be limited to the evidence regarding the penetration
of Cathy's *genital* opening with an object, and, for the reasons
stated herein, we must view this evidence in the light most
favorable to Defendant.

medical purposes." Defendant based his request on the evidence tending to show that he penetrated Cathy's genital opening with his finger wrapped in a wipe for the purpose of cleaning feces and urine during the course of changing her diapers and that this purpose is an "accepted medical purpose." However, the trial court denied the request, to which Defendant properly excepted.

A: Defendant was Entitled to the Instruction

We believe that Defendant was entitled to have the jury instructed on the affirmative defense for "accepted medical purpose" as provided in N.C. Gen. Stat. § 14-27.1(4).

We have held that "[f]or a jury instruction to be required on a particular defense, there must be substantial evidence of each element of the defense when 'the evidence [is] viewed in the light most favorable to the defendant." *State v. Hudgins*, 167 N.C. App. 705, 711, 606 S.E.2d 443, 446 (2005) (citation and quotation marks omitted). The burden rests with Defendant to establish the affirmative defense. *State v. Caddell*, 287 N.C. 266, 289, 215 S.E.2d 348, 363 (1975) (describing an affirmative defense as "one in which the defendant says, 'I did the act charged in the indictment, but I should not be found guilty of the crime charged because * * * ").

In his brief, Defendant points to evidence that, when viewed

in the light most favorable to him, supports giving the instruction. Specifically, he points to his own testimony that he digitally penetrated Cathy's genital opening for the purpose of cleaning feces and urine during diaper changes. He points to the testimony of his medical expert who stated that Cathy's injuries to her genital opening were consistent with Defendant's stated purpose. For example, this witness testified as follows:

> The source of the [genital] injuries were – again, by the information that I was provided, Mr. Stepp in his testimony has admitted to trying to clean a poopy diaper in a very rough way using wipes, his fingers, and in a way that was consistent with this type of trauma. This was harsh, harsh physical trauma in cleaning out a diaper. I have seen more cases than I would like of parents trying to clean out poopy diapers and how difficult it is to get stool out of the vaginal and rectal areas on occasion, and the kind of force that they have to use sometimes. This was excessive, but it is consistent with a digital attack, if you will, on those areas there.

He points to the evidence presented by the State regarding the soiled diapers and wipes found by the police at the apartment. He points to the testimonies of the State medical experts that the injuries to the genital opening were more superficial in nature – in that there was no evidence of deep penetration or that the hymen was broken - and could have been caused by fingers.

Neither party cites to a case in which a North Carolina court has construed the phrase "accepted medical purposes" as contained in N.C. Gen. Stat. § 14-27.1(4). We believe that when the Legislature defined "sexual act" as the penetration of a genital opening with an object, it provided the "accepted medical purposes" defense, in part, to shield a parent[4] - or another charged with the caretaking of an infant - from prosecution for engaging in sexual conduct with a child when caring for the cleanliness and health needs of an infant, including the act of cleaning feces and urine from the genital opening with a wipe during a diaper change. To hold otherwise would create the absurd result that a parent could not penetrate the labia of his infant daughter to clean away feces and urine or to apply cream to treat a diaper rash without committing a Class B1 felony, a consequence that we do not believe the Legislature intended.

Though not controlling on our resolution of this issue, we do find decisions from other jurisdictions, involving statutory language similar to "accepted medical purposes," instructive. For instance, the Texas Court of Criminal Appeals, that State's highest appellate court for criminal cases, handed down a decision on 6

---

[4] There is no language in N.C. Gen. Stat. § 14-27.1(4) which limits its application of the defense to acts performed by medical professionals.

November 2013 ordering a new trial for a defendant, convicted of sexual assaulting a child – where he admitted to digitally penetrating the genital opening of a three-year old girl for the purpose of applying medication for a diaper rash - because the trial court failed to instruct the jury on an affirmative defense provided in the Texas Penal Code, excusing "conduct [which] consisted of medical care for the child[.]" *Villa v. Texas*, 2013 Tex. Crim. App. LEXIS 1655 (2013) (interpreting TEX. PENAL CODE § 22.011(d) (2012)).  On the same day it decided *Villa*, the Texas Court of Criminal Appeals also handed down *Cornet v. Texas*, 2013 Tex. Crim. App. LEXIS 1654 (2013), in which it held, as in *Villa*, that it was error not to instruct on the "medical care" defense, where a defendant was convicted of sexual assault based on digitally penetrating the genital opening of his step-daughter. However, unlike its holding in *Villa*, the court concluded that the error was harmless because the jury in *Cornet* also convicted the defendant of a second sexual assault count based on the defendant's oral contact with the child's anus during the same event.[5]  *Id.* (reasoning that it "is inconceivable that the jury would have found [the defendant] guilty of causing the anus of the complainant to

---

[5] Under TEX. PENAL CODE § 21.011(d), the "medical care" defense is not available where the conduct involves contact of a genital opening by a defendant's mouth.  *Id.*

contact his mouth . . . had it believed his claim that he was providing medical care to the complainant [when he digitally penetrated her genital opening] during the same event").

In a case involving the prosecution of a defendant for digitally penetrating the genital opening of his young step-child – where the defendant admitted to the conduct, but contended that he did so for the purpose of applying salve to treat the child's diaper rash - the Oregon Court of Appeals held that it was reversible error for the trial court not to instruct the jury on an affirmative defense provided by statute which excused such conduct where the "penetration is part of a medically recognized treatment[.]" *Oregon v. Ketchum*, 206 Ore. App. 635, 138 P.3d 860, *review denied*, 341 Ore. 450, 143 P.3d 773 (2006) (quoting Or. Rev. Stat. § 163.412 (2003)). The court ordered a new trial, holding that the defense was not limited to the conduct of medical personnel. *Id.*

We believe the facts of our case are similar to the facts of *Villa* and *Ketchum* – where the courts ordered a new trial – because Defendant was convicted *solely* on a finding that he digitally penetrated Cathy's genital opening with an object.

In the present case, the State makes a number of arguments in support of the trial court's refusal to give the "accepted medical

purpose" affirmative defense instruction.  First, the State argues that Defendant failed to meet his evidentiary burden by failing to produce any evidence to establish that penetrating the genital opening of an infant to clean out feces and urine is, in fact, an "accepted medical purpose," *citing State v. Hageman*, 307 N.C. 1, 27, 296 S.E.2d 433, 448 (1982) (stating that "in this State, we have traditionally placed the burden of production and persuasion on defendants who seek to avail themselves of affirmative defenses").  In other words, the State argues that though there was expert testimony suggesting that Defendant penetrated the genital opening to clean it, none of the experts ever expressly testified that Defendant's actions constituted an "accepted medical purpose."

We agree that there may be circumstances where a defendant would be required to offer direct evidence through the testimony of a medical expert to establish that certain conduct constitutes an "accepted medical purpose," rather than allowing a jury to infer it from the evidence.  However, we do not believe that Defendant was required, in this instance, to offer direct evidence establishing that penetrating the genital opening of an infant for the purpose of cleaning the feces and urine during a diaper change constitutes an "accepted medical purpose."  Our appellate courts

have held on a number of occasions that, in the context of a criminal trial, direct evidence need not be provided to prove a fact if it otherwise is within the "common knowledge and experience" of the jury. *State v. Packer*, 80 N.C. 439, 441-42 (1879). In *Packer*, the defendant appealed his conviction for selling an "intoxicating liquor" where the evidence showed that he sold "port wine," but the State did not produce evidence that "port wine" was, in fact, an "intoxicating liquor." *Id.* In upholding the conviction, our Supreme Court held that "the jury could rightfully as to matters of common knowledge and experience, find without any testimony as to [whether "port wine" is an "intoxicating liquor."] *Id.; see also State v. Fields*, 201 N.C. 110, 114, 159 S.E. 11, 12 (1931); *State v. Payne*, 328 N.C. 377, 400, 402 S.E.2d 582, 595 (1991) (stating, in a prosecution for murder and rape, that "[i]t is common knowledge that homeowners do not change or replace carpets as frequently as once every several months"); *State v. Becker*, 241 N.C. 321, 326, 85 S.E.2d 327, 331 (1954) (stating, in a prosecution for manslaughter where there was testimony as to the defendant's driving speed and his distance from the victim, that "[i]t would seem as a matter of common knowledge and experience that it would have been a physical impossibility for the defendant to have stopped his car in so short

a distance if at the time in question it was traveling at such a rate of speed"); *State v. Purdie*, 93 N.C. App. 269, 280, 377 S.E.2d 789, 795 (1989) (stating, in a prosecution for involuntary manslaughter, that "it is common knowledge that intoxication impairs the ability to drive").

We also believe this evidentiary issue is similar to those in cases involving professional malpractice, where we have stated that an exception to the rule requiring expert testimony to establish the professional standard of care is "where the common knowledge and experience of the jury is sufficient to evaluate compliance with a standard of care." *Russell v. DENR*, __ N.C. App. __, __, 742 S.E.2d 329, 333 (2013) (quoting *Handex v. Haywood*, 168 N.C. App. 1, 11, 607 S.E.2d 25, 31 (2005)). In conclusion, while there may be circumstances where expert testimony *may* be required to establish that certain conduct constitutes an "accepted medical purpose" pursuant to N.C. Gen. Stat. § 14-27.1(4), we believe that it is within the common knowledge and experience of the jury that penetrating the genital opening of an infant to clean feces and urine during a diaper change is an "accepted medical purpose."

The State next argues that the "accepted medical purpose" defense did not apply to the facts of this particular case.

Specifically, the State contends that even if Defendant's *purpose* of cleaning the genital opening was an "accepted medical purpose," doing so *in a manner that causes injury* is not "accepted," and, therefore, Defendant was not entitled to the instruction. We believe the State's argument is misplaced. First, the plain language of the statute provides that the "medical purpose," and *not the manner*, must be "accepted." We do not believe that the Legislature intended to criminalize, as a Class B1 felony, an action by a doctor or a parent who penetrates a genital opening of a child under 13 years of age for an "accepted medical purpose," but does so in a negligent manner, thereby unintentionally causing injuries.[6]

The State further argues the following:

> By defendant's logic, a robber sticking a gun in a victim's vagina or anus to intimidate the victim would not be a sexual offense; torture by inserting objects into a person's genitals or anus would not be a sexual offense; a perpetrator forcefully punching and penetrating a victim's genitalia to harm and degrade them would not be guilty of a sexual offense; a caretaker forcefully penetrating a child in a rage would not be guilty of a sexual

---

[6] We do not imply that the evidence conclusively establishes that Defendant did not intend to cause the injuries to Cathy's genital opening. This is a matter for a jury to resolve. Rather, we believe that a jury *could* reasonably conclude from the evidence – when taken in the light most favorable to Defendant – that Defendant unintentionally caused Cathy's injuries to her genital opening while cleaning her.

offense. By defendant's analysis, if in any of these scenarios, the perpetrator merely claimed to be doing a medical check or administering medication, the "accepted medical purpose" instruction must be given upon request.

However, assuming *arguendo* any of the foregoing scenarios were properly before us, it stretches credulity to propose that these acts could ever be performed for an "accepted medical purpose." Further, as discussed above, the evidence relied upon by Defendant in this case consists of more than his self-serving assertion that he penetrated Cathy's genital opening to clean feces. *See State v. Sessoms*, __ N.C. App. __, __, 741 S.E.2d 449, 452 (2013) (holding that the trial court did not commit error by refusing to instruct the jury on "the defense of others" in the prosecution for assault with a deadly weapon where the only evidence supporting the defense was the defendant's self-serving testimony).

Finally, the State argues that the trial court did not err by refusing to instruct the jury on the "accepted medical purpose" defense because the specific instruction tendered by Defendant for the trial court's consideration was an incorrect statement of law. Specifically, the State argues that the "proposed instruction can be construed to incorrectly place the burden on the State to disprove the affirmative defense beyond a reasonable doubt." We believe this argument is misplaced.

Our Supreme Court has stated that "it is the duty of the trial court to instruct the jury on all of the substantive features of a case. . . . All defenses arising from the evidence presented during the trial constitute substantive features of a case and therefore warrant the trial court's instruction thereon." *State v. Loftin*, 322 N.C. 375, 381, 368 S.E.2d 613, 617 (1988). This duty arises even where a defendant *fails* to request the instruction. *Id.; see also State v. Scanlon*, 176 N.C. App. 410, 424, 626 S.E.2d 770, 780 (2006). "Failure to instruct upon all substantive or material features of the crime charged is error." *State v. Bogle*, 324 N.C. 190, 195, 376 S.E.2d 745, 748 (1989).

In this case, the "accepted medical purpose" defense is a "substantive feature" of this case; and, therefore, the trial court was required to give the instruction even if Defendant never made a request for the instruction. We believe that *State v. Hudgins*, 167 N.C. App. 705, 606 S.E.2d 443 (2005), is instructive on this point. In *Hudgins*, the defendant requested an instruction on the defense of "necessity" in a DWI prosecution. The Court stated the general rule that the defense of "necessity" is available to excuse a person from criminal liability where he acts "to protect life or limb or health[.]" *Id.* at 710, 606 S.E.2d at 447. The defendant provided the trial court with an instruction that was not a correct

statement of the law in that "it [further] suggested that the defense was available for attempts to [protect property from] damage." *Id.* We held that "[a] trial court is not, however, 'relieved of his duty to give a correct . . . instruction [as to a defense], there being evidence to support it, merely because defendant's request was not altogether correct." *Id.* (quoting *State v. White*, 288 N.C. 44, 48, 215 S.E.2d 557, 560 (1975)). Accordingly, we do not need to reach whether Defendant's tendered instruction was a correct statement of the law: Since the instruction pertained to a substantive feature of the case, the trial court was required to give it.

## B: The Error Was Reversible

Having determined that the trial court erred by failing to instruct the jury on the affirmative defense of "accepted medical purpose," we must determine whether the error is reversible pursuant to N.C. Gen. Stat. § 15A-1443 (2011). Defendant argues that the error is a constitutional error and, therefore, the burden is on the State to show that the error was harmless beyond a reasonable doubt, pursuant to N.C. Gen. Stat. § 15A-1443(b). We believe that "insofar as the error committed is not one of constitutional dimension, [D]efendant has met his burden of satisfying us that had the error in the instruction . . . not been

made, there is a reasonable possibility that a different result would have been obtained at trial[,]" pursuant to N.C. Gen. Stat. § 15A-1443(a). *State v. Mash*, 323 N.C. 339, 349-50, 372 S.E.2d 532, 538-39 (1988). Further, "[i]nsofar as the error is one of constitutional dimension, the [S]tate has not satisfied us beyond a reasonable doubt that the error was harmless." *Id.* at 350, 372 S.E.2d at 539. Accordingly, we believe that the error is reversible based on either standard.

Specifically, Defendant admitted to penetrating and causing the superficial tears to Cathy's genital opening. In other words, his defense includes an admission to the elements of the crime of sexual conduct with a child, that is, he admitted that he digitally penetrated Cathy's genital opening. However, Defendant presented evidence that he committed these acts for the purpose of cleaning feces and urine away from Cathy while changing her diapers.

In the State's closing arguments, the prosecutor contended that "even under the defendant's version of the facts, penetrated her with his finger, however slight, . . . . That's what a sexual act is, the defendant's guilty of that charge." In other words, the prosecutor implied that the jury could convict Defendant of felony sexual offense based upon his digital penetration of Cathy's genital opening – conduct to which Defendant admitted – even if

the jury believed Defendant's testimony and evidence that he engaged in the conduct for the purpose of cleaning feces and urine. Furthermore, the trial court instructed the jury that it was their duty to return a verdict of guilty of committing a sexual offense with a child if they found that Defendant had caused the "penetration, however slight, . . . by an object into [Cathy's] genital [] opening[;] that the "object may be an animate or an inanimate object[;] that Cathy was "a child of under the age of 13 years[;]" and that Defendant was "at least 18 years of age."  The jury was *not* given any option in the instruction to, otherwise, find Defendant not guilty even if they determined that Defendant engaged in the conduct for an "accepted medical purpose."  Based on the foregoing, we believe that there is a possibility that the jury, or some number of jurors, would have been satisfied that Defendant penetrated Cathy's genital opening for an "accepted medical purpose."  Therefore, Defendant's conviction of felony first-degree murder must be reversed.

Finally, the State contends that "[i]f this Court allows [Defendant] relief, judgment should be entered on second-degree murder as a lesser-included offense of first-degree murder under both the theory of premeditation and deliberation and felony murder," contending that "[s]econd-degree murder is a lesser

included offense of felony murder." The State's argument based on the theory of premeditation and deliberation is inapposite, as the jury did not convict Defendant based on premeditation and deliberation. As to the State's argument that second degree murder is a lesser included offense of felony murder, neither case cited by the State stands for the proposition that the proper remedy from this Court, where we find reversible error in the conviction of felony first-degree murder, is to direct the trial court to enter judgment on second degree murder. *State v. Gwynn*, 362 N.C. 334, 338, 661 S.E.2d 706, 708 (2008); *State v. Millsaps*, 356 N.C. 556, 565, 572 S.E.2d 767, 774 (2002). Rather, *Gwynn* and *Millsaps* were concerned with the trial court's failure to instruct a jury on the lesser-included offense of second degree murder in a prosecution of felony first-degree murder. We note that, in *Gwynn*, the Supreme Court stated that voluntary manslaughter is also a lesser included offense of felony murder. *Gwynn*, *supra*. Therefore, we do not believe that it is the duty of this Court to invade the province of a jury to determine whether the actions of Defendant constituted second degree murder or some other lesser-included offense of felony murder.

## IV: Conclusion

Defendant inflicted numerous and severe injuries on his ten-month old stepdaughter Cathy on the evening of 8 November 2009, which led to her tragic death. There was substantial evidence presented at trial from which the jury could have convicted Defendant of first-degree murder based on a number of theories. However, the jury based its verdict *solely* on the finding that Defendant had penetrated Cathy's genital opening with an object prior to inflicting the injuries that caused her death. The evidence was conflicting as to whether Defendant penetrated Cathy's genital opening for the sole purpose of cleaning feces and urine while changing her diapers or whether he ever deviated from this purpose. However, a jury could infer from the evidence - when taken in the light most favorable to Defendant - that Defendant penetrated Cathy's genital opening, causing superficial tears thereto, while he was cleaning the feces and urine. Therefore, Defendant was entitled to the "accepted medical purpose" instruction pursuant to N.C. Gen. Stat. § 14-27.1(4), a defense which was a substantive feature of the case, notwithstanding that a proposed instruction tendered by Defendant may have contained an incorrect statement of the law. Defendant properly objected to the trial court's refusal to give the instruction. Given that Defendant admitted to the conduct which

formed the sole basis by which the jury returned a guilty verdict of first-degree murder, the trial court's error by not giving the affirmative defense instruction by which the jury could have excused Defendant of his admitted conduct, we believe the error was prejudicial. Accordingly, we are compelled to reverse the verdict of the jury convicting Defendant of felony first-degree murder and remand this case for a new trial.

NEW TRIAL.

Judge STEPHENS concurs in separate opinion.

Judge BRYANT dissents in separate opinion.

NO. COA13-46

NORTH CAROLINA COURT OF APPEALS

Filed: 21 January 2014

STATE OF NORTH CAROLINA

   v.

JOSHUA ANDREW STEPP

Wake County
No. 09 CRS 209725

STEPHENS, Judge, concurring.

I am constrained by statute, case law, and the evidence presented at trial to agree with the majority opinion that we must grant Defendant a new trial. However, I write separately because I believe the result we are compelled to reach in this appeal is not what our General Assembly envisioned or intended when it provided the affirmative defense of penetration for an "accepted medical purpose[]" under section 14-27.1. *See* N.C. Gen. Stat. § 14-27.1 (2011) (defining "[s]exual act" to include "the penetration, however slight, by any object into the genital or anal opening of another person's body: provided, that it shall be an affirmative defense that the penetration was for accepted medical purposes").

I believe that, in the context of *sexual abuse* prosecutions,

our legislature intended this affirmative defense to distinguish between necessary penetrations required by medical, hygiene, or other health needs from those which are criminal in nature. I *cannot* believe that our legislators intended this affirmative defense be used as a shield by a drunken, drugged, and enraged Defendant who *by his own admission* (1) rubs a baby's face into carpet until she bleeds from second-degree rug burns, (2) bruises her face and head in multiple locations, and then (3) attempts to "clean" her genital and anal regions with such violence that her rectum and vagina are left torn and bleeding (all before asphyxiating the helpless infant by shoving wet toilet paper into her mouth in an effort to silence her hysterical screams of pain). I would draw our General Assembly's attention to the discussion in the majority opinion regarding the distinction between penetration for an accepted medical *purpose* and penetration which occurs for such a purpose in a medically accepted *manner*. Surely it should be a criminal offense, even if not sexual abuse, to penetrate a baby's vagina, even in an alleged attempt to clean feces away, if that action is undertaken in a drunken rage and results in injuries such as those Cathy suffered in the last moments of her brief life.

I further note the State could have elected to charge Defendant with felony child abuse, as the predicate felony to his

first-degree murder charge, pursuant to various provisions of N.C.

Gen. Stat. § 14-318.4:

> (a) A parent or any other person providing care to or supervision of a child less than 16 years of age who intentionally inflicts any serious physical injury upon or to the child or who intentionally commits an assault upon the child which results in any serious physical injury to the child is guilty of a Class E felony . . . .
>
> . . .
>
> (a3) A parent or any other person providing care to or supervision of a child less than 16 years of age who intentionally inflicts any serious bodily injury to the child or who intentionally commits an assault upon the child which results in any serious bodily injury to the child, or which results in permanent or protracted loss or impairment of any mental or emotional function of the child, is guilty of a Class C felony.
>
> (a4) A parent or any other person providing care to or supervision of a child less than 16 years of age whose willful act or grossly negligent omission in the care of the child shows a reckless disregard for human life is guilty of a Class E felony if the act or omission results in serious bodily injury to the child.
>
> (a5) A parent or any other person providing care to or supervision of a child less than 16 years of age whose willful act or grossly negligent omission in the care of the child shows a reckless disregard for human life is guilty of a Class H felony if the act or omission results in serious physical injury to the child.

. . .

(d) The following definitions apply in this section:

(1) Serious bodily injury. — Bodily injury that creates a substantial risk of death or that causes serious permanent disfigurement, coma, a permanent or protracted condition that causes extreme pain, or permanent or protracted loss or impairment of the function of any bodily member or organ, or that results in prolonged hospitalization.

(2) Serious physical injury. — Physical injury that causes great pain and suffering. The term includes serious mental injury.

N.C. Gen. Stat. § 14-318.4 (2011). As noted *supra*, Defendant admitted that his actions caused second-degree rug burns to Cathy's face and deep tears to her anus. These injuries would surely qualify, at a minimum, as "serious physical injur[ies]" under the statute. Likewise, Defendant's actions were plainly willful. I cannot understand the decision by the State to proceed against Defendant on charges for sexual offense felonies without also charging him with felony child abuse, an offense for which Defendant's shocking claim of "diaper changing" would have provided little or no defense.

NO. COA13-46

NORTH CAROLINA COURT OF APPEALS

Filed:  21 January 2014

STATE OF NORTH CAROLINA

    v.                              Wake County
                                    No. 09 CRS 209725
JOSHUA ANDREW STEPP

        BRYANT, Judge, dissenting.


        The majority opinion holds that the trial court erred and grants defendant a new trial, stating that defendant is entitled to an affirmative defense instruction based upon evidence showing that defendant's actions were for an "accepted medical purpose." Because I do not believe there was sufficient evidence that defendant's actions fell within the definition of accepted medical purpose, I do not believe defendant was entitled to an instruction on this affirmative defense; therefore, I respectfully dissent.

        The majority maintains that it is a matter of common knowledge and common sense that cleaning feces from a body is an act performed for an accepted medical purpose.  I would agree that cleaning feces is necessary for purposes of good hygiene (as is washing one's hands and body, and cleaning one's teeth), and that failure to clean feces could eventually result in an infection or

condition which might require medical attention.  But, I would not agree that, standing alone, defendant's act of cleaning feces from the infant should be considered an act that was performed for an accepted medical purpose.

"Medical" means "[o]f or relating to the study or practice of medicine."  AMERICAN HERITAGE COLLEGE DICTIONARY 846 (3d ed. 1993). "Accepted" means "[w]idely encountered, used, or recognized."  *Id.* at 8.  General Statutes, section 14-27.1, defining "sexual act," provides an affirmative defense for penetration of the genital or anal opening of a person where the act is done for an accepted medical purpose.  N.C. Gen. Stat. § 14-27.1(4).

A common sense reading of General Statutes, section 14-27.1(4), suggests that the affirmative defense of penetration for an accepted medical purpose is available only to a defendant who can show the act was clearly done for a purpose generally approved or accepted by a physician or was done for purposes accepted in the medical field or in the practice of medicine.

In the case before us, no one testified that defendant's actions were carried out for an accepted medical purpose.  Neither defendant's medical expert nor any other medical professional testified that cleaning feces from an infant is an act that is recognized as having an accepted medical purpose.  Had defendant's

medical expert testified that the cleaning was for an accepted medical purpose, we would be in a different posture. However, what we do have is evidence, including defendant's own admission, which supports a finding that defendant's conduct caused the injuries to the infant. There was testimony that vaginal tears may be common place with harsh cleaning and that the penetration of the infant's anus and vagina in an effort to clean off feces was responsible for the injuries inflicted. Yet, none of the evidence supports a finding that such conduct was for an accepted medical purpose.

At trial before the jury, and now before this Court, defendant asks not only that we accept his theory that his actions in causing the injuries to the genital and anal area of the child were not sexual in nature, but that we make the extraordinary leap to determine defendant's actions were conducted for an accepted medical purpose and, thus, within the safe harbor of an affirmative defense. Because I am unable to make such a leap, I do not believe the trial court erred in refusing to give an instruction on the affirmative defense of penetration for an accepted medical purpose.

The majority cites *Cornet v. Texas*, No. PD-0205-13, 2013 Tex. Crim. App. LEXIS 1654 (Tex. Crim. App. 6 Nov. 2013), and other

Texas and Oregon cases[7] as persuasive authority for its reasoning that defendant should have been entitled to the affirmative defense instruction. However, while the language of the statutes[8] involved in those cases is similar in the context of allowing an affirmative defense to an act of penetration, our statute clearly requires that acts of penetration be for accepted medical purposes before allowing the defense. I am not persuaded that the cases interpreting statutes in Texas and Oregon should inform the result of the case before us.

While I would not go so far as to posit that non-medical professionals are not entitled to this defense, I do believe it is necessary to require some direct testimony that the considered conduct is for a medically accepted purpose in order to be entitled

---

[7] *Villa v. Texas*, No. PD-0792-12, 2013 Tex. Crim. App. LEXIS 1655 (Tex. Crim. App. 6 Nov. 2013), and *Oregon v. Ketchum*, 206 Or. App. 635, 138 P.3d 860 (2006).

[8] Tex. Penal Code § 22.011(d) (2012) ("It is a defense to prosecution [for sexual assault of a child] that the conduct consisted of medical care for the child *and* did not include any contact between the anus or sexual organ of the child and the mouth, anus, or sexual organ of the actor or a third party."), as quoted in *Villa*, 2013 Tex. Crim. App. LEXIS, at *12 (emphasis added); Or. Rev. Stat. § 163.412(1) (2003) ("[Neither first nor second degree sexual penetration statute] prohibits a penetration described in either of those sections when: The penetration is part of a medically recognized treatment or diagnostic procedure[.]"), as quoted in *Ketchum*, 206 Or. App. at 637-38, 138 P.3d at 862 (emphasis suppressed).

to the affirmative defense instruction. To this end, I agree with the language of the dissent in *Cornet v. Texas*, 359 S.W.3d 217 (Tex. Crim. App. 25 Jan. 2012): "[w]hen asserting a 'medical care' defense, the defendant bears the burden of offering some evidence that his conduct was, in fact, a legitimate, accepted medical methodology. Before a trial judge is required to instruct on . . . a defense . . . there must be evidence in the record that raises . . . that defense as a valid, rational alternative to the charge." *Id.* at 229-30 (Cochran, J., dissenting).

Here, the majority states its belief that our legislature provided for the affirmative defense

> in part, to shield a parent or other charged with the caretaking of an infant, from prosecution for engaging in sexual conduct with a child when caring for the cleanliness and health needs of an infant, including the act of cleaning feces and urine from the genital opening with a wipe during a diaper change.

This is a most expansive reading of the affirmative defense portion of the statute. I must agree with the concurring opinion that the legislature could not have intended this statute to be used as a shield by a defendant whose attempt to "clean" the child's genital and anal area was performed "with such violence that her rectum and vagina [was] left torn and bleeding."

While I do not agree that defendant is entitled to an affirmative defense instruction on penetration for an accepted medical purpose, I also point out that defendant was not denied the opportunity to put on a defense. Defendant testified that his cleaning feces was the reason for the digital insertion into the child's genital and rectal area. However, defendant did not put forth evidence that his actions were for an accepted medical purpose. There was no testimony from defendant's medical experts or any other witnesses to support an instruction to the jury that the act of cleaning feces from the infant could be considered an act performed for accepted medical purposes. And, a trial court is not required to instruct the jury on an affirmative defense for which there is not sufficient evidence. Perhaps it would be a closer question had defendant's request for this affirmative defense instruction been based on his application of medication to treat a diaper rash or to treat some other medical condition. However, this appeal concerns defendant's actions of wiping feces from a baby, a common, everyday occurrence in the life of a child necessary to maintaining good hygiene, not the treatment of a medical condition.

Therefore, because I do not believe that defendant met his burden of showing that his actions were for an accepted medical purpose,

the trial court was not required to instruct on the requested affirmative defense.  I would find no error in the trial court's refusal to so instruct.